# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

CRAWFORD TIMES,      )
     )
           Petitioner,      )
     )
     vs.      )      **Case number 4:07cv1981 TCM**
     )
TROY STEELE,[1]      )
     )
           Respondent.      )

## <u>MEMORANDUM AND ORDER</u>

Crawford Times (Petitioner), a Missouri prisoner, petitions the United States District Court for the Eastern District of Missouri for federal habeas corpus relief from a 1999 conviction after a jury trial. See 28 U.S.C. § 2254. This matter is before the undersigned United States Magistrate Judge for review and final disposition.[2] Finding the federal habeas petition presents five grounds, and concluding that ground two and the second part of ground three are procedurally barred and the other grounds are without merit, the petition will be

---

[1] Petitioner, who is incarcerated at the Southeast Correctional Center, named Troy Steele as the Respondent when Petitioner filed this habeas action. Jeff Norman is now the Warden of Southeast Correctional Center. See http://doc.mo.gov/division/dai/warden.php (last visited on March 29, 2011). The Court will substitute Jeff Norman as the Respondent in this proceeding. See Rule 2(a), Rules Governing Section 2254 in the United States District Courts.

At the time he filed this action, Petitioner was serving concurrent terms of imprisonment resulting from the judgment he is challenging in his federal habeas petition. Petitioner identified the then-Attorney General of Missouri, Jay Nixon, in the petition. See Pet. at 1 (Doc. 1). Because Petitioner is not challenging a sentence he is going to serve in the future, the Attorney General of Missouri need not be named as a party respondent in this habeas action. See Rule 2(b), Rules Governing Section 2254 in the United States District Courts.

[2] This matter is before the undersigned United States Magistrate Judge on consent of the parties. 28 U.S.C. § 636(c).

denied without further proceedings.

**<u>Background</u>**

Petitioner was charged, as a prior and persistent offender, with one count of robbery in the first degree, in violation of Missouri Revised Statutes § 569.020, for the forcible stealing from Karla Giles (Victim) of a briefcase and its contents on December 21, 1998, while "threaten[ing] the immediate use of a dangerous instrument against" Victim, and with one count of armed criminal action related to the robbery charge, in violation of Missouri Revised Statutes § 571.015.[3]  (Information, Legal File, Resp't Ex. A at 32-33 [Doc. 10]; all of Respondent's exhibits are at Doc. 10.)

At the jury trial, the State presented the testimony of Victim (Trial Tr., Resp't Ex. B2, at 97-149); Michael Akers (<u>id.</u> at 150-69), and Curtiss Baskett (<u>id.</u> at 170-224).  Victim testified to the encounter with a man who took her briefcase, including that he spoke to her before scuffling with her and getting the briefcase, and that she felt something on the back of her neck and the man told her he had a knife, although she did not see a knife; described the man she had encountered; and testified to her identification of Petitioner, both at a pre-trial line-up and in court.  (<u>Id.</u> at 97-149.)  Victim also testified to providing a statement to a security officer, David Cozart, about a threat she received prior to trial from a woman in a car driven by a "big man."  (<u>Id.</u> at 137-43.)

---

[3]  Originally, Petitioner had been charged, as a prior and persistent offender, with committing the first-degree robbery and armed criminal action with another, Curtiss Baskett.  (Indictment, Legal File, Resp't Ex. A, at 9-10.)

Akers testified that he drove by the encounter; that he almost hit Petitioner as Petitioner walked in front of Akers's vehicle after the encounter; that he followed Petitioner, who dropped an umbrella and a briefcase Petitioner had been carrying and then ran back and picked up the briefcase before running to and getting in a parked car, which then took off by "ramm[ing]" the side of Akers's vehicle; that he got the license plate number of the car Petitioner was in and then returned to see if Victim was okay, returning the umbrella to Victim; and to his description of Petitioner and the driver of the car that hit his vehicle, who he described as a big man. (Id. at 150-69.)

Baskett testified that, at Petitioner's direction, he drove Petitioner to the area where the encounter occurred and parked; that Petitioner got out of the car saying "he would be right back" and "all of the sudden [Baskett saw Petitioner] running back to the car," Petitioner jumped in the car and told him to drive; that Petitioner "had a knife in [a] bag" at that time; that a vehicle hit his car as he drove away from the scene; and that he made a written statement to the police that night. (Id. at 170-224.)

Petitioner did not testify, and presented the testimony of Detective Michael Berra, who read Baskett's written statement into evidence and described the line-up that he had conducted in this case. (Trial Tr., Resp't Ex. B3, at 7-34). During trial, in addition to participating in voir dire, cross-examining witnesses, and presenting an opening statement, objections and closing argument, Petitioner's counsel unsuccessfully presented motions for judgment of acquittal at the close of the State's evidence and at the close of all the evidence, as well as motions to suppress the identification and line-up. (See, e.g., id. at 34-46.)

The jury found Petitioner guilty of both offenses. (See id. at 87.) After denying Petitioner's motion for new trial, the trial court sentenced Petitioner to concurrent terms of thirty years for first-degree robbery and ten years for armed criminal action. (Sentence and Judgment, Legal File, Resp't Ex. A, at 65-67; Sentencing Tr., Resp't Ex. B4, at 3-4 and 21.)

Petitioner raised two points in his timely direct appeal. (Petr. Br., Resp't. Ex.C, at 8-10, 16.) In his first point, Petitioner argued the trial court erred, and violated Petitioner's rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments, in denying Petitioner's motions for judgment of acquittal because the evidence presented by the State was insufficient as a matter of law to sustain the convictions for first-degree robbery and armed criminal action in that the State failed to show Petitioner committed any act by threatening the use of a dangerous instrument. (Id. at 8, 10.) For his second point on appeal, Petitioner argued the trial court plainly erred and violated his rights to due process, equal protection, and fair and reliable sentencing under the Fifth, Sixth, Eighth, and Fourteenth Amendments, when it removed sentencing from the jury in that there was no indication of record that the State met its burden of proof, under Missouri Revised Statutes § 557.036.4 and 558.021, to show that Petitioner was represented by or had waived counsel for any prior convictions and the trial court failed to find, as required by Missouri Revised Statutes § 558.021, that Petitioner was a prior and persistent offender. (Id. at 9, 16.)

The Missouri Court of Appeals for the Eastern District of Missouri affirmed Petitioner's conviction in a summary per curiam order, dated April 3, 2001, accompanied by a memorandum explaining its decision, which was sent to the parties. (Order and Mem.

Supplementing Order Affirming J. Pursuant to Mo. S. Ct. Rule 30.25(b), Resp't Ex. E.)  In denying Petitioner's first point that the trial court erred in denying his motions for judgment of acquittal because there was insufficient evidence supporting his convictions, the state appellate court stated:

> In reviewing a challenge to the sufficiency of the evidence, we accept as true all of the evidence and inferences favorable to the State and disregard all evidence and inferences to the contrary. State v. Grim, 854 S.W.2d 403, 405 (Mo. banc 1993). Appellate review is limited to a determination of whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. Id. Under this standard, we review the evidence adduced at trial and examine the inferences reasonably supported by that evidence to determine whether the jury's verdict was proper. Id.

> Included in the elements of robbery in the first degree are the requirements that the offender is armed with a deadly weapon; uses or threatens the immediate use of a dangerous instrument against any person; or displays or threatens the use of what appears to be a deadly weapon or dangerous instrument. Section 569.020.1 RSMo 1994.

> The evidence, viewed in the light most favorable to the verdict, indicates that [Petitioner] took [V]ictim's briefcase while threatening [V]ictim with a knife. Although [V]ictim did not see the knife, [Petitioner] told [V]ictim that he had a knife and [V]ictim testified that she felt "something on the back of her neck." Under these circumstances, there was sufficient evidence to submit the first degree robbery count to the jury, and upon which the jury could reasonably find [Petitioner] guilty.

> A person commits the crime of armed criminal action when that person "commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon." Section 571.015. The term "dangerous instrument" is defined as "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." Section 556.061(9). Serious physical injury means "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss of impairment of the function of any part of the body." Section 565.002(6).

[Petitioner] contends that the State failed to prove that the knife he held to [V]ictim's neck was "readily capable of causing death or serious physical injury," because there was no evidence of the knife's cutting features.

The offense of armed criminal action may be proven by circumstantial evidence.  State v. Daniels, 18 S.W.3d 66, 69 (Mo. [Ct.] App. 2000).  Even ordinary objects can be "dangerous instruments," depending on the circumstances in which they are used.  Id. at 68.  Moreover, a knife may be considered a dangerous instrument even when the record is silent as to its characteristics.  See State v. Hyman, 11 S.W.3d 838 (Mo. [Ct.] App. 2000).

In Hyman, the defendant approached the victim from behind, held a knife to her neck, and told her that if she screamed he would kill her.  Id. at 840.  The victim testified that she briefly saw only "a little" of the knife, namely "the tip."  Id.  There was no evidence of the knife's size, length, shape, or sharpness.  The Western District [of the Missouri Court of Appeals] held that the evidence was sufficient to convict the defendant of armed criminal action.  Id. at 841.  The court noted:

> "To determine whether an object is a dangerous instrument we must look to its use under the circumstances.  *A knife used in a threatening manner is a dangerous instrument.*"  Holding a knife to someone's throat in order to get them to remain silent is using that knife "in a threatening manner."  Therefore, [the defendant]'s use of the knife under these circumstances qualifies as use of a "dangerous instrument."  There was sufficient evidence from which a jury could find that [the defendant] used a "dangerous instrument" in his encounter with [the v]ictim.

Id. (internal citation omitted) (emphasis added).

Here, as in Hyman, there was no evidence of the knife's cutting characteristics. [Petitioner], however, told [V]ictim he had a knife and [V]ictim felt something against her neck. [Petitioner]'s conduct in holding the knife to [V]ictim's neck was no less threatening that the conduct of the defendant in Hyman.  As such, we find that there was sufficient evidence from which a reasonable jury could have found that [Petitioner] used a dangerous instrument and, thus, was guilty of armed criminal action.

The trial court did not err in denying [Petitioner]'s motions for acquittal as there was sufficient evidence to support a conviction on each count.  Point

denied.

(Order and Mem. Supplementing Order Affirming J. Pursuant to Mo. S. Ct. Rule 30.25(b),

Resp't Ex. E, at 2-4 (footnote omitted).)

In denying Petitioner's second point, that the trial court erred in failing to comply with

Missouri Revised Statutes § 558.021 in that the State did not prove, and the trial court did not

find, Petitioner to be a prior and persistent offender before submitting the case to the jury, the

Missouri Court of Appeals stated:

> Because [Petitioner] failed to raise this allegation of error during trial,
> we review this point only for plain error. Relief will be granted under the plain
> error rule only when the error so substantially affects the rights of the accused
> that a manifest injustice or miscarriage of justice inexorably results if left
> uncorrected. State v. Baker, 23 S.W.3d 702, 713 (Mo. [Ct.] App. 2000).

> Section 558.021.2 expressly provides that a defendant's status as a prior
> or persistent offender shall be pleaded, established, and found, in a hearing
> conducted prior to submission of the case to the jury and outside of the jury's
> presence. The timing of the hearing may be important because a finding that
> a defendant is not a prior or persistent offender would require a verdict
> directing instruction submitting consideration of punishment to the jury. State
> v. Hinkle, 987 S.W.2d 11, 14 (Mo. [Ct.] App. 1999). A prior offender
> designation, however, would transpose the duty to sentence from the jury to the
> judge. Section 558.016.1; State v. Jennings, 815 S.W.2d 434, 447 (Mo. [Ct.]
> App. 1991). A persistent offender designation would further allow the judge
> to sentence the defendant to an extended term. Section 558.016.1.

> The prescribed statutory procedure was not followed. [Petitioner]'s case
> was submitted to the jury on September 9, 1999. Later that day, the jury
> returned its verdict finding [Petitioner] guilty on all counts. The trial court,
> however, did not determine [Petitioner]'s prior or persistent offender status
> until the sentencing hearing was conducted on November 5, 1999, when the
> following discussion occurred:

> > THE COURT: The Court has carefully considered the
> > information that was presented during the course of the jury trial

in this case. The Court has read and carefully considered the information in the presentence investigation report. That report contains some information complimentary to you[,] Mr. Times. That report also contains the information that your arrest history spans a period of more than twenty years and includes ten prior convictions, including eights [sic] for prior felonies. And notes that you were on parole at the time that [Victim] was attacked last December.

[PETITIONER]: Yes, sir.

THE COURT: Based upon all of those factors and hearing no legal reason why judgment and sentence should not now be pronounced against [Petitioner], it is the Judgment and Sentence of this Court that [Petitioner] shall be sentenced to imprisonment . . . for a term of thirty years [for first-degree robbery] and a term of ten years [for armed criminal action]. These sentences shall run concurrently with one another for a total sentence of thirty years.

The failure to comply with the statutory procedure was error as it was more than a mere irregularity. State v. Wynn, 666 S.W.2d 862, 864 (Mo. [Ct.] App. 1984). Nevertheless, procedural errors in prior and persistent offender hearings do not warrant reversal unless a defendant is shown to have been prejudiced. Jennings, 815 S.W.2d at 446; Wynn, 666 S.W.2d at 864.

We cannot discern how [Petitioner] suffered any prejudice. [Petitioner] admits that the State pleaded [Petitioner]'s prior and persistent offender status in the indictment and substitute information. Thus, [Petitioner] knew prior to trial that he might be sentenced as a prior and persistent offender. There was evidence to support the trial court's finding that [Petitioner] was a prior and persistent offender, in that the trial court reviewed [Petitioner]'s presentence investigation report and [Petitioner] unqualifiedly admitted to the accuracy of its contents. The trial court found [Petitioner] to be a prior and persistent offender as evidenced by the judge's comments on the record and by the fact that the judge, rather than the jury, undertook sentencing. Moreover, [Petitioner] cannot complain that he received an extended term sentence, as [the sentence imposed] was within the statutory limit for a first-time offender on each count. We cannot speculate that the jury would have assessed punishment any differently.

- 8 -

Although the trial court determined [Petitioner]'s prior and persistent offender status after rather than before submission to the jury, the statute does not specify the consequences of a failure to comply with its terms. Wynn, 666 S.W.2d at 864. In such a case, a statute is generally held to be directory and not mandatory, "particularly in the case of a statute specifying a time within which an official act is to be performed, 'with a view merely to the proper, orderly and prompt conduct of the business.'" Id. at 864-65 (citations omitted). Thus, [Petitioner] acquired no vested right to have the jury assess punishment because the hearing was not conducted at the prescribed time. Id. at 865.

"The central fact of importance and substance is that [Petitioner] is a persistent offender, as was amply demonstrated, in which case the Court, not the jury, determines punishment upon a finding of guilt." Id. at 864. It is true that [Petitioner]'s conviction would have to be set aside if there was no evidence or finding of his prior and persistent offender status. Id. at 865. In such a case, the failure to submit the question of punishment to the jury would have been fatal. Id. But here, there was evidence and a finding was entered, even if tardily. Id. [Petitioner] suffered no manifest injustice or miscarriage of justice. Point denied.

The judgment is affirmed pursuant to [Mo. S. Ct.] Rule 30.25(b).

(Mem. Supplementing Order Affirming J. Pursuant to [Mo. S. Ct.] Rule 30.25(b), Resp't Ex. E, at 2-7 (ninth and tenth alterations in original.) The court issued its mandate on July 5, 2001. (Mandate, Resp't Ex. F.) Petitioner's motions for transfer to the Missouri Supreme Court were denied on May 10, 2001 and June 26, 2001. (See, e.g., Pages 6-7 of the Docket Sheet for **State v. Times**, No. ED77141, https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited Mar. 30, 2011).)

On July 20, 2001, Petitioner filed a pro se motion for postconviction relief. (Mot. Legal File, Resp't Ex. G at 4-13.) Thereafter, through counsel, Petitioner filed an amended motion for postconviction relief, including a request for evidentiary hearing. (Id. at 18-43.) In the amended motion, Petitioner set forth four claims that his trial attorney provided

ineffective assistance of counsel. (Id.) For his first and fourth claims, Petitioner contended

his trial attorney was ineffective for not impeaching Victim's identification of Petitioner

regarding her estimates of his age and for not impeaching Victim about being threatened not

to testify. (Id. at 19-21 and 37-38.) Petitioner argued, in his second claim, that his trial

attorney was ineffective for failing to offer a lesser-included offense instruction for second-

degree robbery or stealing from a person. (Id. at 25-26.) Finally, Petitioner urged, in his

third claim, that his trial attorney was ineffective in not permitting Petitioner to testify. (Id.

at 31.)

The motion court[4] held an evidentiary hearing on Petitioner's amended motion[5] at

which Petitioner's trial attorney and Petitioner testified, see Mot. Hr'g Tr. (Resp't Ex. I); and

then denied the motion, Findings of Fact, Conclusions of Law, and Order ("Judgment"), Mot.

Legal File (Resp't Ex. G, at 44-60).

Petitioner raised three points on his timely postconviction appeal. (Pet'r Br., Resp't

---

[4] The judge who had presided over the trial also presided over the postconviction motion proceedings.

[5] Upon the filing of the timely amended postconviction motion, any claims in the initial pro se motion for postconviction relief were no longer before the motion court except to the extent they were included in the amended motion. See **Tinsley v. State**, 258 S.W.3d 920, 927 (Mo. Ct. App. 2008) ("the only claim which the motion court could have considered and determined was that raised in the amended Rule 29.15 motion for post-conviction relief [because t]he filing of an amended motion superseded [the initial] motion and rendered it a nullity" (citations omitted)); **Day v. State**, 143 S.W.3d 690, 693-94 (Mo. Ct. App. 2004) ("The amended motion supersedes [the initial] motion and renders it a nullity. . . . . Therefore, the allegations of a timely-filed amended motion would be the only matters before the motion court" (citation omitted)); **Leach v. State**, 14 S.W.3d 668, 670-71 (Mo. Ct. App. 2000) (an allegation not included in the amended motion for postconviction relief is "not properly before the motion court").

Ex. J.)  First, Petitioner argued the motion court's denial of his postconviction motion was erroneous, and violated his rights to due process and the effective assistance of counsel, because his trial attorney failed to impeach Victim regarding her identification of Petitioner and her statements about being threatened not to testify.  (Id. at 14, 18.)  Second, Petitioner urged the motion court's denial of his postconviction motion was erroneous and violated his rights to due process and the effective assistance of counsel, because his trial attorney failed to tender a lesser-included offense instruction for second-degree robbery or stealing from a person, which instruction was supported by the question whether there was a knife.  (Id. at 15, 24.)  Third, Petitioner argued the motion court's denial of his postconviction motion was erroneous, and violated his rights to due process, to testify, and to the effective assistance of counsel, because his trial attorney rested without presenting Petitioner's testimony.  (Id. at 17, 29.)

The Missouri Court of Appeals affirmed the motion court's judgment in a summary per curiam order, dated June 19, 2007, accompanied by a memorandum explaining its decision, which was sent to the parties.  (Order and Mem. Supplementing Order Affirming J. Pursuant to Mo. S. Ct. Rule 84.16(b), Resp't Ex. L.)  Viewing the relevant facts in the light most favorable to the verdict, the state appellate court found as follows:

> Late in the afternoon of December 21, 1998, [Victim] left her office at the Washington University School of Medicine and walked toward the parking lot.  While she walked, [Petitioner] approached her and asked her a question. Victim did not understand [Petitioner] and asked him to repeat the question, but [Petitioner]'s response was muffled.  Victim told [Petitioner] that she did not understand what he had said.  Suddenly, [Petitioner] threw Victim to the ground and told Victim that he had a knife.  Victim felt something on her neck,

under her coat. [Petitioner] then took Victim's briefcase and umbrella and walked away. Victim crawled from the parking lot to the street and alerted a Washington University shuttle bus driver, who radioed university security. Victim then realized that her briefcase was missing.

Meanwhile, a witness (Witness) was turning onto Clayton Street when he saw [Petitioner] and Victim fall to the ground between two cars. Witness heard screaming, so he turned his car around to get a better view of the parking lot where Victim had been headed after leaving her office. By the time Witness turned around, [Petitioner] had begun walking toward Witness' car. As [Petitioner] walked in front of Witness' car, Witness noticed [Petitioner] was carrying a briefcase and an umbrella. Witness followed [Petitioner], who dropped the briefcase and umbrella but then stopped, retrieved the briefcase, and ran to the sidewalk. Witness continued to follow [Petitioner] as he ran down the sidewalk to a parked car. When [Petitioner] got in, witness watched as [Petitioner] and the driver of the car engaged in a brief confrontation, then attempted to drive away. However, Witness blocked the car with his own vehicle. The driver of the other car rammed his car into Witness' car, causing it to skid on some ice. Although the car eventually drove away, Witness got its license plate number to report to police.

Victim first spoke with an officer from university security, who prepared an incident report that noted Victim had described her attacker as "approximately 30 years of age." Victim subsequently spoke with officers from the St. Louis Metropolitan Police Department, who also prepared an incident report. The police department's report included a notation that Victim had described her attacker as a black male, 36 to 40 years of age, with "deep creases" or scars on his face, and who spoke with an African or Nigerian accent. A few hours later, Victim went to the police station to view a line-up, where she identified [Petitioner] as her attacker. [Petitioner] was subsequently charged with first-degree robbery and armed criminal action for forcibly stealing Victim's briefcase and its contents while threatening the immediate use of a dangerous instrument.

In August 1999, a few weeks prior to [Petitioner]'s trial, a woman riding in a car driven by a heavy-set black man approached Victim as she walked to her office at Washington University Medical Center. The woman shouted, "[Y]ou won't make it to court." Victim reported the incident to David Cozart (Co[]zart), a university security officer. Cozart supplemented the original incident report prepared by university security and noted that Victim "believed the person driving the suspect vehicle could have been . . . the driver of the

vehicle involved in the original incident."

At trial, the driver of the "get away" car, Curtis Baskett (Baskett), testified. Baskett told jurors that, around noon on the day of the incident, his mother-in-law had asked him to help resolve a dispute between [Petitioner] and Baskett's mother-in-law over the sale of an invalid food stamp card. Baskett drove to [Petitioner]'s residence, picked up [Petitioner], and drove him to Baskett's mother-in-law's home. After an argument, [Petitioner] returned the money Baskett's mother-in-law previously had paid him in exchange for the food stamp card. Using his mother-in-law's car, Baskett then attempted to drive [Petitioner] back to his residence, but [Petitioner] offered to give Baskett gas money if Baskett would take [Petitioner] somewhere else. Baskett agreed, and [Petitioner] directed him to drive to the intersection of Clayton and Euclid and told him to park the car. [Petitioner] said he would be "right back" and exited the car. A few minutes later, [Petitioner] returned, jumped in the car, and said, "Don't stop. Just drive." [Petitioner] held a bag and a knife, neither of which Baskett had seen before [Petitioner] exited the car. Baskett drove to [Petitioner]'s residence, then, later, drove to his mother-in-law's home. When he arrived, Baskett's mother-in-law told him that the police had called and informed her that her car had been involved in a robbery. Baskett later gave police a statement of what had happened. [Petitioner] did not testify in his own defense.

Further facts will be discussed as necessary to our analysis of the issues on appeal.

(Mem. Supplementing Order Affirming J. Pursuant to Mo. S. Ct. Rule 84.16(b), Resp't Ex. L, at 2-4 (eighteenth alteration in original).) After discussing the principles applicable to a claim that an attorney provided ineffective assistance of counsel (id. at 4-5), the state appellate court discussed each of Petitioner's three points on appeal.

In rejecting Petitioner's point based on his trial attorney's ineffective assistance in failing to impeach Victim's identification of her attacker and her inconsistent statements about being threatened not to testify, the Missouri Court of Appeals stated:

in its findings and conclusions of law, the motion court analyzed Counsel's

testimony at the evidentiary hearing in the context of the evidence available to the parties at trial and found Counsel's decision not to cross-examine Victim about the discrepancy between the age estimates she gave to university security and police to be a matter of trial strategy because Counsel believed the issue likely would not carry any weight with the jury on the question of [Petitioner]'s guilt. Our own review of the record supports that finding. The report issued by university security stated that Victim estimated her attacker to be 30 years old while the St. Louis Metropolitan Police Department report stated that Victim estimated her attacker to be between 36 and 40 years old. [Petitioner] actually was 44 years old at the time of the incident and a mere four years older than the high end of the estimate Victim gave to police. At the evidentiary hearing on [Petitioner]'s motion, Counsel testified that he decided not to attack Victim's estimate of the age of her attacker because "descriptions of age don't matter unless they are really off." Counsel continued:

> In other words, the difference between a fifteen year old and a forty year old would matter but these were all descriptions of — a man in middle age, somewhat younger than or — or — or near the age of the complaining witness.
>
> [THE STATE]: And so your assessment of [Petitioner]'s appearance is not that his appearance is remarkably different from a aged — person age thirty or age thirty-six to forty, is that correct?
>
> [COUNSEL]: I — I — I didn't see it as making much of a difference.
>
> [THE STATE]: Okay. And, in fact, at the time of trial, [Petitioner] was forty-four, is that correct?
>
> [COUNSEL]: That sounds right. I don't recall.
>
> [THE STATE]: Okay. And even though you did attempt to impeach [Victim] on many parts of her description of [Petitioner], the jury did still find [Petitioner] guilty, correct?
>
> [COUNSEL]: Yes.
>
> [THE STATE]: Okay. And so they apparently believed [Victim] when she was describing her attacker and when she identified

[Petitioner] both in the lineup and in Court, is that correct?

[COUNSEL]: Yes.  She was a very compelling witness.

Counsel also testified that he focused his cross-examination on other, more potentially damaging inaccuracies in Victim's description of her attacker, including the color of his hair, his facial features, and what he wore.  We find Counsel's trial strategy was reasonable under the circumstances.

[Petitioner] also contends that Counsel should have impeached Victim by questioning her about the inconsistency between the statement she allegedly made to Cozart after she was threatened, indicating that Baskett was the driver of the car in which the woman who threatened Victim was riding, and her testimony at trial denying she ever made the statement.  Although [Petitioner] frames this contention as a "failure to impeach" claim, as the State points out, this argument essentially alleges Counsel was ineffective for failing to call Cozart to testify contrary to Victim's testimony denying the alleged statement concerning Baskett.

At the evidentiary hearing, Counsel testified that his primary trial strategy was to show [Petitioner] was not the person who attacked Victim. Counsel believed that "trying to tear up [Victim]" and making "her seem like a liar" was not the best trial strategy because Victim "was a small woman, who . . . was hurt in the incident . . . and the jury would have been more troubled by why [Counsel] was beating up [Victim] rather than concentrating" on Counsel's theory that . . . the State was prosecuting the wrong person.  Counsel further testified that calling Cozart to testify would communicate that somebody threatened Victim, a fact the jury would infer to be probative of [Petitioner]'s guilt given his association with Baskett on the day of the robbery rather than showing Victim was not a credible witness.  The motion court found that Counsel's decision constituted reasonable trial strategy.  We agree. Furthermore, nothing in the record indicates Cozart would have been available and willing to testify concerning the statements Victim allegedly made about Baskett being the driver of the car involved in the threat incident, and [Petitioner] failed to present any evidence of what Cozart's testimony would have been.  When the focus of a claim of ineffective assistance of counsel is grounded on the attorney's failure to call a certain witness, the movant must prove the witness could have been located through a reasonable investigation, would have testified if called, and such testimony would have provided the movant with a viable defense.  Simmons v. State, 100 S.W.3d 143, 145 (Mo. [Ct.] App. . . . 2003); State v. Ross, 939 S.W.2d 15, 19 (Mo. [Ct.] App. . . .

1997). The decision not to call a witness is a matter of trial strategy and is virtually unchallengeable. State v. Davison, 920 S.W.2d 607, 610 (Mo. [Ct.] App. . . . .1996).

Finally, we are not persuaded that Cozart's testimony about whether Victim did or did not state Baskett was the driver of the car involved in the threat incident would have actually impeached Victim or somehow would have provided a viable defense by impeaching Baskett. Even if the jury did not believe Baskett's testimony connecting [Petitioner] to the robbery, the jury still heard other ample evidence identifying [Petitioner] as Victim's attacker. Accordingly, there is no reasonable probability that the outcome of the trial was affected by Counsel's decision not to impeach Victim through Cozart's testimony. Point denied.

(Mem. Supplementing Order Affirming J. Pursuant to Mo. S. Ct. Rule 84.16(b), Resp't Ex.

L, at 6-9 (fourth, sixth, seventh, ninth, tenth, fourteenth, fifteenth, eighteenth, and twenty-

second through twenty-fourth alterations in original).)

In denying Petitioner's point on appeal based on his attorney's ineffectiveness for

failing to propose an instruction for a lesser-included offense, the Missouri Court of Appeals

stated:

To sustain a conviction for a lesser-included offense, the greater offense with which the defendant was charged must include in the charging instrument a description of the manner in which the greater offense was committed and allegations essential to constitute a charge of the lesser offense. State v. Dewey, 869 S.W.2d 834, 837 (Mo. [Ct.] App. . . . 1994). For a defendant to be entitled to a lesser-included offense instruction, the evidence must provide some basis for an acquittal of the greater offense and a conviction of the lesser-included offense. Section 556.046; Dewey, 869 S.W.2d at 837. However, where a lesser-included offense instruction is inconsistent with the defense theory asserted at trial, we will not find the defendant's trial attorney ineffective for failing to request such an instruction. Kluck v. State, 30 S.W.3d 872, 878 (Mo. App. [Ct.] . . . 2000).

A person commits the crime of first-degree robbery when he forcibly steals property of another and, in the course thereof, he, or another participant

in the crime, causes serious physical injury to any person, is armed with a deadly weapon, uses or threatens the immediate use of a dangerous instrument against any person, [or] displays or threatens the use of what appears to be a deadly weapon or a dangerous instrument. Section 569.020. A person commits the crime of second-degree robbery when he forcibly steal property of another. Section 569.030.

Here, the State charged [Petitioner] with first-degree robbery for forcibly stealing Victim's briefcase and, in the course thereof, threatening Victim with the immediate use of a dangerous instrument.

At the evidentiary hearing, Counsel testified that, given his trial strategy of arguing Victim had misidentified [Petitioner] as her attacker, to propose an instruction for the lesser-included offense of second-degree robbery, which did not require the jury to find [Petitioner] had used a dangerous instrument but did require the jury to find [Petitioner] had robbed Victim, would have negated that strategy. In its [judgment], the [motion court] found Counsel's decision not to propose the lesser-included instruction was an appropriate decision given his stated trial strategy. We agree. A lesser-included instruction would have been inconsistent with the defense asserted at trial; thus, counsel was not ineffective for failing to request such an instruction. Kluck, 30 S.W.3d at 878.

Furthermore, [Petitioner] has failed to demonstrate that the submission of a lesser-included instruction would have caused the jury to acquit him of first-degree robbery while convicting him of second-degree robbery. The State charged [Petitioner] with threatening the immediate use of a dangerous instrument. To establish [Petitioner] used a dangerous instrument, the State presented Victim's testimony that, although she did not see a knife, her attacker told her he had a knife and pressed it on her neck under her coat during the attack. The State also presented Baskett's testimony that he saw [Petitioner] holding a knife when he re-entered Baskett's car after the robbery. From this evidence, the jury reasonably could have inferred that [Petitioner] used a knife, a dangerous instrument, when he attacked and robbed Victim. Nothing contradicted this evidence and nothing indicated that [Petitioner] stole Victim's briefcase but did not use a dangerous instrument, i.e., a knife, during the robbery, which would have been required for the jury to find [Petitioner] guilty of second-degree robbery. Accordingly, we cannot conclude that [Petitioner] would have been acquitted of the greater offense of first-degree robbery but convicted of the lesser-included offense of second-degree robbery if Counsel had proposed a lesser-included instruction. Point denied.

(Mem. Supplementing Order Affirming J. Pursuant to Mo. S. Ct. Rule 84.16(b), Resp't Ex.

L, at 9-11.)

In denying Petitioner's point based on his trial attorney's ineffectiveness in failing to

present Petitioner's testimony, the Missouri Court of Appeals stated:

> A defendant has the absolute authority to make certain fundamental decisions about his case, including whether to testify, which is a personal right that belongs to the defendant and is a decision that cannot be made by his attorney. Slater v. State, 147 S.W.3d 97, 101 (Mo. [Ct.] App. . . . 2004). However, an attorney's advice to his client about whether or not to testify is a matter of trial strategy, which is not, barring exceptional circumstances, a ground for awarding post-conviction relief. Id.

> At sentencing, [Petitioner] told the trial court that he did not testify at trial because Counsel informed [Petitioner] that Counsel "saw no reason why [Petitioner] should have to take the stand." [Petitioner] stated that he followed Counsel's advice in this regard but did not complain that he regretted the decision not to testify. At the evidentiary hearing, [Petitioner] testified that he and Counsel had discussed [Petitioner]'s right to testify, [Petitioner] understood he had the right to testify, and Counsel had advised [Petitioner] not to testify because the State would bring in evidence of [Petitioner]'s prior convictions. [Petitioner] testified that, prior to trial, he told Counsel several times about his desire to testify and that, if he had been able to testify, he would have told the jury he had been at home with his fiancee and his grandchildren at the time Victim was attacked and robbed.

> Counsel testified that he and [Petitioner] had discussed whether [Petitioner] would testify. Counsel informed [Petitioner] that the choice to testify was [Petitioner]'s, and [Petitioner] appeared to understand. counsel also advised [Petitioner] that if he did, in fact, testify, the State could cross-examine [Petitioner] on his lengthy criminal record, which included a relatively recent conviction for robbery. Counsel explained that he always told his clients that they were to make the big decisions in the case, such as whether or not [to] testify.

> In its [judgment], the motion court found that both Counsel and [Petitioner] knew about [Petitioner]'s lengthy criminal history, and, in light of that history, Counsel advised [Petitioner] to refrain from taking the witness

stand but left the final decision to [Petitioner].  Although [Petitioner]'s . . . testimony and Counsel's testimony at the evidentiary hearing were contradictory, the motion court concluded the evidence did not support [Petitioner]'s claim that Counsel prevented [Petitioner] from testifying.  The motion court also concluded the evidence showed Counsel's advice allowed [Petitioner] to weigh the pros and cons of testifying on his own behalf, but, ultimately, [Petitioner] voluntarily decided not to testify.  The motion court was entitled to believe or disbelieve the evidence, including [Petitioner]'s testimony, whether it was contradicted or undisputed, and we defer to the motion court's determination of the witnesses' credibility.  <u>Slater</u>, 147 S.W.3d at 101. Accordingly, we find the motion court did not err in finding that Counsel did not prevent [Petitioner] from testifying and, was not, therefore, ineffective. Point denied.

 (Mem. Supplementing Order Affirming J. Pursuant to Mo. S. Ct. Rule 84.16(b), Resp't Ex. L, at 11-13.)  The state appellate court issued its mandate on July 19, 2007.  (Mandate, Resp't Ex. M.)

In his timely federal habeas petition, Petitioner asserts five grounds for relief.  (Pet'r Pet. [Doc. 1]).  In his first ground, Petitioner states there was a due process violation in that there was insufficient evidence of the offenses because the State failed to provide evidence that he committed the offenses by using a dangerous instrument.  (<u>Id.</u> at 6.)  For his second ground for relief, Petitioner contends the trial court plainly erred and violated due process in removing sentencing from the jury because there is no indication of record that the state court met its burden of proof under Mo. Rev. Stat. §§ 557.036.4 and 558.021 to establish the prior convictions or that he was represented by or had waived counsel at the time of the prior judgments; and the trial court failed to make a finding, as required by Mo. Rev. Stat. § 558.021, that Petitioner was a prior and persistent offender.  (<u>Id.</u> at 7-8.)  In his third ground, Petitioner argues that his trial counsel was ineffective in failing to impeach Victim regarding

her identification of the assailant and her "inconsistent statement about being threatened not to testify"; and in failing to present any defense evidence. (<u>Id.</u> at 9.) For his fourth and fifth grounds, Petitioner claims his trial attorney provided ineffective assistance in failing to tender an instruction for the lesser-included offense of robbery in the second degree or stealing from a person, because there was no proof that a knife was used in the robbery offense, and in thwarting Petitioner's wish to testify by resting without calling Petitioner to the stand when Petitioner's testimony would have provided a defense. (<u>Id.</u> at 11 and 12-A.) Respondent counters that the second ground for relief and the second part of the third ground for relief are procedurally barred, and the other claims lack merit. The Court will address Respondent's procedural bar arguments before addressing the merits of any claims.

### Discussion

<u>Procedural Bar.</u>  Respondent argues that the sentencing issue set forth as the second ground for relief is procedurally barred because the Missouri Court of Appeals provided only plain error review of that claim, and that the ineffective assistance of trial counsel claim set forth as the second part of the third ground for relief is procedurally barred because Petitioner did not pursue that claim in his postconviction appeal.

A state prisoner must fairly present each of his claims in each appropriate state court before seeking federal habeas review of the claim. **Baldwin v. Reese**, 541 U.S. 27, 29 (2004). Absent a showing of cause and prejudice or a miscarriage of justice, a federal habeas court may not reach the merits of claims procedurally defaulted due to a petitioner's failure to follow applicable state rules in raising the claims in state court, **Sawyer v. Whitley**, 505

U.S. 333, 338 (1992). See, e.g., **Storey v. Roper**, 603 F.3d 507, 523-24 (8th Cir. 2010) (not addressing the merits of an ineffective assistance of counsel claim that the petitioner had not pursued on appeal from the denial of postconviction relief), cert. denied, 79 U.S.L.W. 3492 (U.S. Feb. 28, 2011) (No. 10-8163); **Owsley v. Bowersox**, 234 F.3d 1055, 1058-59 (8th Cir. 2000) (holding that federal habeas review of claim based on trial court error was precluded by the Missouri Supreme Court's ruling that defendant had failed to preserve an issue of constitutional trial court error, where his attorney did not make specific objections at trial and the issue was not raised in a motion for new trial).

Missouri Supreme Court Rule 29.11(d) requires that, with three exceptions not applicable here,[6] allegations of error in a jury-tried criminal case be included in a motion for new trial to be preserved for appellate review. Thus, this Rule precludes appellate review of allegations of trial court error if that error is not raised in a motion for new trial. See, e.g., **State v. Pennington**, 24 S.W.3d 185, 188 (Mo. Ct. App. 2000) (trial court error in allowing the prosecutor to question a witness about an uncharged crime by defendant was not raised in motion for new trial and not preserved for appellate review); **State v. Thurman**, 887 S.W.2d 403, 409 (Mo. Ct. App. 1994) (trial court error in admitting evidence of a subsequent criminal act was not preserved for appellate review because it was not included in defendant's motion for new trial). A review of the record shows that Petitioner did not properly present ground two, a contention of trial court error, and so it was reviewed on appeal only for plain

---

[6] The three exceptions are jurisdiction, whether the indictment or information states an offense, and the sufficiency of the evidence. Mo. S. Ct. R. 29.11(d)(1)-(3).

error.

"When a state court reviews a petitioner's claim under a plain-error standard, in federal habeas proceedings [the court] either review[s] the claim for plain error or view[s] the claim as procedurally barred and decline[s] to consider it at all absent a showing of cause and prejudice." **Roll v. Bowersox**, 177 F.3d 697, 700 (8th Cir. 1999).  In **Toney v. Gammon**, 79 F.3d 693 (8th Cir. 1996), the Eighth Circuit found that a federal habeas claim that had been reviewed by the state appellate court only for plain error was "procedurally barred as neither cause nor prejudice ha[d] been demonstrated." **Id.** at 699.  Other Eighth Circuit cases hold that, when a state court conducts plain error review, a federal habeas court may also review the issue for "manifest injustice."  See, e.g., **Thomas v. Bowersox**, 208 F.3d 699, 701 (8th Cir. 2000); **Mack v. Caspari**, 92 F.3d 637, 641 (8th Cir. 1996).  These alternative analyses are available because the conflict in the case law allows a court to "choose which line of cases to follow." **Hornbuckle v. Groose**, 106 F.3d 253, 257 (8th Cir. 1997); see also **Burns v. Gammon**, 173 F.3d 1089, 1095 (8th Cir. 1999) (noting that under such circumstances a court "is free to select what it believes to be the better rule").  In **Sweet v. Delo**, 125 F.3d 1144 (8th Cir. 1997), the Eighth Circuit had before it two habeas claims subjected to plain error review in state court, and chose to consider one of those claims procedurally barred while considering the other claim under plain error analysis. **Id.** at 1152.     Here, the Court chooses to follow **Toney**, and concludes that the state appellate court's plain error review of the sentencing claim now set forth as ground two precludes consideration of the merits of that

claim absent a showing of cause and prejudice.

The ineffective assistance of counsel claim Petitioner presents as the second part of ground three also may not be considered on the merits absent a showing of cause and prejudice. A postconviction proceeding is the exclusive procedure for pursuing in state court ineffective assistance of counsel claims; and successive postconviction motions are not permitted. Mo. S. Ct. Rule 29.15(a) and (l); **Moore-El v. Luebbers**, 446 F.3d 890, 896 (8th Cir. 2006). Moreover, the Missouri Supreme Court Rules expressly provide for an appeal from a postconviction motion court's ruling. Mo. S. Ct. Rule 29.15(k). Claims that should have been but were not presented on appeal from a denial of a postconviction motion are procedurally defaulted. See **Turnage v. Fabian**, 606 F.3d 933, 936, 940-41, 942 (8th Cir. 2010) (not addressing the merits of a federal claim that had not been fairly presented in a brief to the state supreme court after the denial of postconviction relief); **Storey**, 603 F.3d at 523-24 (not addressing the merits of a claim that the petitioner had not pursued on appeal from the denial of postconviction relief); **Interiano v. Dormire**, 471 F.3d 854, 856 (8th Cir. 2006) (claims not presented in a Rule 29.15 postconviction motion or included in appeal are procedurally defaulted); **Osborne v. Purkett**, 411 F.3d 911, 919 (8th Cir. 2005) (a claim raised in a Rule 29.15 postconviction motion but not presented on appeal was procedurally barred); **Sweet**, 125 F.3d at 1150 (a claim not raised in the postconviction appeal was defaulted); **Lowe-Bey v. Groose**, 28 F.3d 816, 818 (8th Cir. 1994) ("The failure to raise the ineffective assistance claims in an appeal from the denial of [the postconviction motion]

raises a procedural bar to pursuing those claims in federal court").

Because the record discloses that Petitioner did not pursue in his postconviction appeal the second part of ground three, which alleges that his trial attorney provided ineffective assistance in failing to present evidence at trial, that claim is procedurally defaulted.

"Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a [federal habeas] court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims." **Skillicorn v. Luebbers**, 475 F.3d 965, 976-77 (8th Cir. 2007). "'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" **Greer v. Minnesota**, 493 F.3d 952, 957 (8th Cir. 2007) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). There is no exhaustive catalog of the objective impediments, nor have the precise contours of the cause requirement been clearly defined. **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999).

Petitioner has not shown any cause for his failure to present either of his two procedurally defaulted claims. Because no cause has been established for Petitioner's procedural defaults, it is unnecessary to consider whether he has demonstrated prejudice. **Abdullah v. Groose**, 75 F.3d 408, 413 (8th Cir. 1996) (en banc).

These defaulted grounds may be reached, even in the absence of a showing of cause and prejudice, if Petitioner establishes that a failure to consider their merits will result in a

fundamental miscarriage of justice. "Procedurally barring a claim that establishes actual innocence is considered a fundamental miscarriage of justice." **Cox v. Burger**, 398 F.3d 1025, 1031 (8th Cir. 2005). A showing of actual innocence requires new evidence and a "show[ing] that 'it is more likely than not that no reasonable juror would have convicted him in light of th[at] new evidence.'" **Osborne**, 411 F.3d at 920 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'" **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting Schlup, 513 U.S. at 316).

Petitioner does not submit any new evidence of his actual innocence, nor does he allege that such evidence exists.

For the foregoing reasons, the sentencing claim in ground two and the ineffective assistance of trial counsel claim presented as the second part of ground three in Petitioner's habeas petition are procedurally barred and will not be considered on their merits. The Court will consider the merits of the remaining grounds for relief, which are not procedurally barred.

Merits - Standard of Review. Title 28 U.S.C. § 2254(d) mandates that a federal court grant habeas relief on a claim that was adjudicated on its merits by the State courts *only* "when the state court's decision [is] contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court [of the United States],

or the [state court] decision [is ]based on an unreasonable determination of the facts in light of the evidence presented in the state court." **de la Garza v. Fabian**, 574 F.3d 998, 1001 (8th Cir. 2009), cert. denied, 130 S. Ct. 2412 (2010); accord **Christenson v. Ault**, 598 F.3d 990, 994 (8th Cir. 2010). "A state court decision is contrary to clearly established federal law if it reaches a conclusion opposite to one reached by the [United States] Supreme Court on a question of law or decides the case differently than the [United States] Supreme Court has decided a case with a materially indistinguishable set of facts." **de la Garza**, 574 F.3d at 1001; accord **Losh v. Fabian**, 592 F.3d 820, 823 (8th Cir. 2010). "A state court decision involves an unreasonable application of clearly established federal law if, in the federal court's independent judgment, the relevant state court decision not only applied clearly established federal law incorrectly, but also did so unreasonably." **de la Garza**, 574 F.3d at 1001. "The unreasonable application inquiry is an objective one." **Id.**; see **Losh**, 592 F.3d at 823 (under the unreasonable application clause of § 2254, a habeas petition may be granted "only if the state court applied the correct governing legal principle in an objectively unreasonable manner").

Importantly, "[o]nly rulings in Supreme Court decisions issued before the state court acts are considered clearly established federal law, for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling Supreme Court holding on the point." **Losh**, 592 F.3d at 823 (citations omitted). The state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the

state-court decision contradicts them.'" **Revels v. Sanders**, 519 F.3d 734, 739 (8th Cir. 2008)) (quoting Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)).

"[T]he 'summary nature' of the [state court's] discussion of [a] federal constitutional question does not preclude application of [§ 2254's] standard." **Brown v. Luebbers**, 371 F.3d 458, 462 (8th Cir. 2004) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law precedential principles to the contrary." **Harrington v. Richter**, 131 S. Ct. 770, 784-85 (2011). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" **Id.** at 785.

Additionally, in a federal habeas action pursued by a state prisoner, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The deference owed by a federal habeas court to a state court's findings of fact includes deference to state court credibility determinations, **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), and to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim, **Odem v. Hopkins**, 382 F.3d 846, 849 (8th Cir. 2004). Moreover, the presumption of correctness of findings of fact applies to the factual determinations made by both the state trial court and the state appellate court. **Smulls**, 535 F.3d at 864-65.

Ground One - Sufficiency of the Evidence. Petitioner contends his due process right was violated in that there was insufficient evidence supporting his convictions because there was insufficient evidence that a dangerous instrumentality was used during the offenses. Respondent urges that the Missouri Court of Appeals correctly and reasonably applied **Jackson v. Virginia**, 443 U.S. 307 (1979), in determining that there was sufficient evidence to support the convictions.

In **Jackson**, the United States Supreme Court held that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof - defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." **Id.** at 316. In reviewing the sufficiency of the evidence, the sole question is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." **Id.** at 319. The **Jackson** standard applies to Petitioner's sufficiency of the evidence claim. See **Garrison v. Burt**, No. 10-1709, 2011 WL 781219, at *4 (8th Cir. Mar. 8, 2011) (using Jackson standard to analyze a habeas petitioner's sufficiency of the evidence claim).

The scope of review of a state court's determination of whether evidence was sufficient is "extremely limited"; and "it is the province of the fact-finder, not [the federal habeas court], 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" **Skillicorn**, 475 F.3d at 977 (quoting Jackson

- 28 -

443 U.S. at 319); see also **Hill v. Norris**, 96 F.3d 1085, 1088 (8th Cir. 1996) (noting a federal habeas court does not "reweigh the evidence" and "must accord 'great deference' where a state appellate court has found the evidence supporting the conviction constitutionally sufficient" (quoting Ward v. Lockhart, 841 F.2d 844, 846 (8th Cir. 1988)). A federal habeas court "may grant [habeas] relief only if [it] find[s] the [state appellate court's] conclusion that the evidence satisfied the Jackson sufficiency of evidence standard 'both incorrect and unreasonable.'" **Garrison**, 2011 WL 781219, at *4 (quoting Cole v. Roper, 623 F.3d 1183, 1187 (8th Cir. 2010)).

While not expressly mentioning **Jackson**, the Missouri Court of Appeals clearly applied the **Jackson** standard in deciding there was sufficient evidence to support Petitioner's convictions. (Mem. Supplementing Order Affirming J. Pursuant to Mo. S. Ct. R. 30.25(b), Resp't Ex. E, at 2-4.) The record supports the state appellate court's determination. The state court decision is not contrary to or an unreasonable application of **Jackson**; and constituted a reasonable determination of the facts based on the evidence presented. Ground one is denied.

Grounds Three through Five - Ineffective Assistance of Trial Counsel. Petitioner contends that his trial attorney was ineffective in failing to impeach Victim's testimony by cross-examining her more thoroughly regarding her identification of Petitioner and by calling Cozart as a witness (ground three),[7] in failing to offer a lesser-included offense instruction

---

[7] It is not clear that all aspects of Petitioner's present argument in support of this ground for relief were presented in his postconviction proceedings. Compare Pet'r Reply at 17-25 with Pet'r Br.

(ground four), and in resting without calling Petitioner to testify (ground five). Respondent counters that the Missouri Court of Appeals reasonably and correctly applied **Strickland v. Washington**, 466 U.S. 668 (1984), and its progeny in rejecting each of these claims.

Standard of Review. An accused's Sixth Amendment right to the assistance of counsel is a right to the effective assistance of counsel. **Marcrum v. Luebbers**, 509 F.3d 489, 502 (8th Cir. 2007) (citing Kimmelman v. Morrison, 477 U.S. 365, 377 (1986)). "To show a constitutional violation of the right to counsel a [petitioner] must show first, that counsel's performance was deficient, and second, that counsel's errors prejudiced the defense." **Id.** (citations omitted) (citing Strickland, 466 U.S. at 687); **Kellogg v. Skon**, 176 F.3d 447, 452 (8th Cir. 1999).

To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" **Greiman v. Thalacker**, 181 F.3d 970, 972 (8th Cir. 1999) (quoting Strickland, 466 U.S. at 687). More specifically, a petitioner must demonstrate that "counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney." **Armstrong v. Kemna**, 534 F.3d 857, 863 (8th Cir. 2008) (citing Strickland, 466 U.S. at 687-89). "Only reasonable competence, the sort expected of the 'ordinary fallible lawyer,' is demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (quoting Nolan v.

───────────────

in postconviction appeal, Resp't Ex. J, at 14, 18-23. Therefore, the Court limits its discussion to the impeachment issues presented in the postconviction appeal.

Armontrout, 973 F.2d 615, 618 (8th Cir. 1992)).  The court is highly deferential in analyzing counsel's conduct and "indulg[es] a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment.'" **Armstrong**, 534 F.3d at 863 (quoting Middleton v. Roper, 455 F.3d 838, 846 (8th Cir. 2006)); accord **Nguyen v. United States**, 114 F.3d 699, 704 (8th Cir. 1997) ("In determining whether counsel's conduct was objectively reasonable, there is a 'strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance'" (quoting Strickland, 466 U.S. at 689)).

To establish prejudice, a petitioner must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Armstrong v. Kemna**, 590 F.3d 592, 595-96 (8th Cir.) (quoting McCauley-Bey v. Delo, 97 F.3d 1104, 1105 (8th Cir. 1996)), cert. denied, 130 S.Ct. 3369 (2010).  "'A reasonable probability is [a probability] sufficient to undermine confidence in the outcome.'" **Id.** at 596 (quoting McCauley-Bey, 97 F.3d at 1105); accord **Carroll v. Schriro**, 243 F.3d 1097, 1100 (8th Cir. 2001) (quoting Strickland, 466 U.S. at 694).  The petitioner bears the burden of showing such a reasonable probability. **Lawrence v. Armontrout**, 961 F.2d 113, 115 (8th Cir. 1992).

The question of prejudice from counsel's performance need not be reached if the performance was not deficient.  See **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998).  Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice.  See **Strickland**, 466 U.S. at 697; **Williams**

**v. Locke**, 403 F.3d 1022, 1025 (8th Cir. 2005).

While not expressly mentioning **Strickland**, the state appellate court applied the standard of **Strickland** to Petitioner's ineffective assistance of counsel claims.

<u>Ground Three - Ineffective Assistance of Trial Counsel - Failure Further to Impeach Victim.</u>  Petitioner contends that his trial attorney was ineffective in failing to impeach Victim's testimony by cross-examining her more thoroughly regarding her identification of Petitioner, specifically about her estimates of Petitioner's age, and by calling Cozart as a witness.  Respondent counters that this ground for relief lacks merit because the Missouri Court of Appeals correctly and reasonably applied **Strickland** and its progeny to this claim.

A trial attorney's choice of means to impeach a witness may be considered reasonable trial strategy.  **Ervin v. Delo**, 194 F.3d 908, 914 (8th Cir. 1999) (citing <u>Gillette v. Tansy</u>, 17 F.3d 308, 311 (10th Cir. 1994), for the proposition).  Here, the Missouri Court of Appeals found that counsel's decision not to cross-examine Victim regarding her estimates of the assailant's age was a matter of reasonable trial strategy in light of counsel's testimony that "descriptions of age don't matter unless they are really far off" and evidence of record that Victim's estimates of the assailant's age ranged from thirty to forty years old, when Petitioner was forty-four years old at the time of the offense.  Moreover, the state court found, counsel's testimony revealed he had a reasonable trial strategy that focused his cross-examination of Victim "on other, more potentially damaging inaccuracies" in her description of the assailant, such as his hair color, facial features, and clothing.

These state court determinations are not contrary to or an unreasonable application of **Strickland**, and are not based on an unreasonable determination of the facts in light of the evidence presented. Petitioner's trial counsel did not provide ineffective assistance in deciding not to cross-examine Victim regarding her estimates of the assailant's age, as that decision constituted "trial strategy entitled to substantial deference" by this Court. **Osborne**, 411 F.3d at 918; see also **Mills v. Armontrout**, 926 F.2d 773, 774 (8th Cir. 1991) (finding the trial attorney's decision not to impeach a prosecution witness was a strategic one), limited on other grounds by **Becker v. Luebbers**, 578 F.3d 907, 913 n.4 (8th Cir. 2009), cert. denied, 130 S. Ct. 1520 (2010).

With respect to Petitioner's claim that trial counsel was ineffective in failing to present Cozart's testimony in an effort to impeach Victim based on the inconsistency between her pre-trial statement to Cozart and her trial testimony regarding her receipt of a threat, the Missouri Court of Appeals found that decision by trial counsel constituted reasonable trial strategy. This was based on counsel's testimony that his primary trial strategy was to show that Petitioner was not the assailant, and his testimony that an effort by him to attack Victim's veracity might trouble the jury and change the jury's focus from the defense to a concern about why defense counsel was attacking Victim's veracity after she had been physically hurt in the encounter. The state appellate court's decision was also based on trial counsel's testimony that Cozart's testimony would communicate a threat to Victim, which the jury might infer as probative of Petitioner's guilt due to her reference to Baskett, who was

associated with Petitioner at the time of the offense.

These state court determinations are not contrary to or an unreasonable application of **Strickland**, and are not based on an unreasonable determination of the facts in light of the evidence presented. Petitioner's trial counsel did not provide ineffective assistance in deciding not to impeach Victim about her inconsistent statements, through the presentation of Cozart's testimony, as that decision by counsel constituted "trial strategy entitled to substantial deference" by this Court. **Osborne**, 411 F.3d at 918; see also **Mills**, 926 F.2d at 774 (finding the trial attorney's decision not to impeach a prosecution witness was a strategic one).

The first part of ground three, that Petitioner's trial attorney provided ineffective assistance of counsel by failing more fully to cross-examine Victim regarding the assailant's age and by failing to present Cozart is denied.

Ground Four - Ineffective Assistance of Trial Counsel - Failure to Offer a Lesser-Included Offense Instruction. Petitioner contends that his trial attorney was ineffective in failing to offer a lesser-included offense instruction for the robbery offense. Respondent counters that this ground for relief lacks merit because the Missouri Court of Appeals correctly and reasonably applied **Strickland** and its progeny to this claim.

The Missouri Court of Appeals concluded counsel's decision not to propose a lesser-included offense instruction because it would conflict with the trial strategy of arguing Victim had misidentified her assailant was reasonable. This state court decision is not contrary to

or an unreasonable application of **Strickland**, and is not an unreasonable determination of the facts in light of the evidence presented.

A trial attorney's failure to offer a lesser-included offense instruction does not constitute the ineffective assistance of counsel where the failure is the result of a strategic decision not to offer a lesser-included offense instruction that is inconsistent with the defense presented at trial. **Neal v. Acevedo**, 114 F.3d 803, 806 (8th Cir. 1997). That is the situation here. Petitioner's trial counsel did not provide ineffective assistance in making the strategic decision not to propose a lesser-included offense instruction.

Ground four is denied.

Ground Five - Ineffective Assistance of Counsel - Failing to Present Petitioner's Testimony. For his fifth ground, Petitioner argues his trial attorney provided ineffective assistance by failing to present his testimony during trial. Respondent counters that this ground for relief lacks merit because the Missouri Court of Appeals correctly and reasonably applied **Strickland** and its progeny to this claim, and because the claim was based on factual findings that are supported by a reasonable evidentiary basis and are entitled to the presumption of correctness.

The Missouri Court of Appeals found that Petitioner and his trial attorney discussed Petitioner's right to testify and that the attorney advised against it due to Petitioner's prior convictions but told Petitioner that the decision was his to make. The state appellate court also deferred to the motion court's determination of witness credibility that counsel did not

prevent Petitioner from testifying and that Petitioner voluntarily decided not to testify after weighing the pros and cons of testifying. The appellate court concluded that the motion court did not err in finding counsel was not ineffective.

An accused has a federal constitutional right to testify on his own behalf at his criminal trial. **Rock v. Arkansas**, 483 U.S. 44, 51-53 (1987). "Because the right to testify is a fundamental constitutional guarantee, only the defendant is empowered to waive the right" and that waiver must be made voluntarily and knowingly. **United States v. Bernloehr**, 833 F.2d 749, 751 (8th Cir. 1987); <u>accord</u> **United States v. Ward**, 598 F.3d 1054, 1059 (8th Cir. 2010). Where a state court's findings of the attorney's advice regarding the right to testify and of the acceptance of counsel's advice are clearly supported by the record, a federal habeas court should "not second guess them." **Frey v. Schuetzle**, 151 F.3d 893, 898 (8th Cir. 1998) (pre-AEDPA federal habeas proceeding).

The record here supports the state court's determination that Petitioner voluntarily and knowingly waived his federal constitutional right to testify by choosing, after receiving the advice of his trial attorney, to exercise his constitutional right not to testify. The state court's decision finding counsel was not ineffective in failing to present Petitioner's testimony at trial is not an incorrect or unreasonable application of clearly established federal law, and reflects a reasonable determination of the facts based on the evidence presented.

Ground five is denied.

**Conclusion**

After careful consideration, the Court finds that the second ground for relief and the second part of the third ground for relief are procedurally barred, and Petitioner's other grounds for federal habeas relief lack merit. Accordingly,

**IT IS HEREBY ORDERED** that Jeff Norman is **SUBSTITUTED** as the Respondent in this case.

**IT IS FURTHER ORDERED** that the 28 U.S.C. § 2254 petition of Crawford Times is **DENIED** without further proceedings.

An appropriate Judgment shall accompany this Memorandum and Order.


/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE


Dated this 31st day of March, 2011.